## Patterson *against* Poindexter.
## Boker *against* Hazard.

An instrument in writing issued by a bank, signed by the assistant cashier, "I hereby certify that C. T. has deposited in this bank payable twelve months from 1st May 1839 with five per cent. interest till due, per ann. $3691.63, for the use of R. P. & Co. and payable only to their order upon the return of this certificate," is not a promissory note within the statute of Anne, but a certificate of deposit on special terms.

Such instrument is negotiable for the purposes of transfer only, but not to make R. P. & Co. liable on their endorsement to the holder. It is a special agreement to pay the deposit to any one who should present the certificate and the depositor's order.

THESE were writs of error to the District Court for the city and county of *Philadelphia.* The first was an action brought by John J. Poindexter against Robert Patterson & William C. Patterson, trading as R. Patterson & Co., on the following instrument, a copy of which was filed:

No. 716.     *Mississippi Union Bank, Jackson, Miss., July 2,* 1839.
     I hereby certify that C. S. Tarply has deposited in this bank, payable twelve months from 1st May 1839, with five per cent. *interest till due,* per annum, three thousand six hundred and ninety-one *dollars and sixty-three* cents, for the use of R. Patterson & Co., and payable only to their order upon the return of this certificate.     (Signed)     C. W. CLIFTON, *Ass't Cashier.*

(Written across the face) Regular number seven hundred and sixteen. W. H. Wilkinson, Teller.

Thirty-six hundred and ninety-one dollars and sixty-three cents. (Endorsed) Presented 1st May 1840. William P. Wynn, Teller.

Pay Edward Yorke, Esq., or order. R. Patterson & Co. Without recourse to me. E. Yorke.

[Patterson v. Poindexter — Boker v. Hazard.]

The following affidavit of defence was filed :

"William C. Patterson, one of the above-named defendants, being duly sworn, says, that the defendants have a just and legal defence to the whole of the plaintiff's demand in the above case; that the nature and character of the defence are as follows, viz: that the signature of the defendants to the instrument of writing of which a copy is filed in the above case, creates no liability on the part of the defendants in any manner whatever by any law or statute governing the rights of the parties."

The court below entered judgment for want of a sufficient affidavit of defence.

Errors assigned :

1. The affidavit of defence filed in the court below states a sufficient defence; and judgment ought not to have been given for want of a sufficient affidavit of defence.

2. The copy of the instrument filed establishes no contract by the defendants below, or other liability on their part, nor any cause of action whatsoever.

3. The instrument, a copy of which is filed, is not a negotiable instrument; and the defendants, by endorsing it, incurred no liability.

4. The writing of the name of the defendants below on the back of the instrument (a copy of which is filed) is in the nature of an assignment, and not in the nature of an endorsement of a negotiable instrument.

5. The defendants below never wrote or authorized to be written the words, " Pay Edward Yorke, Esq. or order," which appear written over their name, and hence it does not appear that they intended to insert words making the instrument negotiable further than their own assignee.

6. The action is improperly brought in the name of John J. Poindexter.

7. The mode by which the transfer is made by a simple endorsement evinces an intention merely to transfer the credit. Had it been the contract of the parties that the defendants below should have been liable on the default of the bank, they would have drawn a check instead of endorsing the certificate.

The other was a suit brought by Rowland G. Hazard against Charles S. Boker, on the following instrument, a copy of which was filed :

*Mississippi Union Bank, Jackson, Miss., July* 2, 1839.

No. 726.   $1115.52.    I hereby certify that C. S. Tarply has deposited in this bank, payable twelve months from 1st May 1839, with five per cent. interest till due, eleven hundred and fifteen dollars and fifty-two cents, for the use of Charles S. Boker, and payable only to his order upon the return of this certificate.    C. W. Clifton, *Ass't Cashier.*

(Endorsed) Pay to the order of T. T. & K. Leavel. Charles S. Boker, Philadelphia.

Pay R. G. Hazard, or order, without recourse to us. T. T. & K. Leavel.

Presented May 1, 1840. William P. Wynn.

The following affidavits of defence were filed:

"Charles S. Boker, the above-named defendant, being duly sworn according to law, doth depose and say, that he has a just defence to the whole of the plaintiff's claim in the above case, the nature and character of which is as follows, viz: That the instrument of writing, a copy of which is filed, and upon which the plaintiff's action is brought, is not a negotiable instrument in the legal sense of that term, and therefore, as he is advised, he is not liable to pay the same by virtue of his endorsement thereon. And this deponent further saith, that he endorsed the same without any design or intention in any wise to guaranty the contract of the Mississippi Union Bank, or to engage in any event to pay the money mentioned in the said instrument. That the said instrument is known as and called by all men of business a certificate of deposit, and not as a promissory note; that it is called a certificate *of deposit* in the protest thereof. That it passes solely upon the credit of the bank which makes the same, and this deponent considers the present attempt to make him liable for the same, to be a novelty and an experiment. Deponent does not believe that the present holder of the same, took the same upon the credit of this deponent's name. And this deponent further says, that this suit was brought in the name of Rowland G. Hazard; and this deponent says, that at the time said certificate was protested for non-payment it was held by one J. J. Poindexter, to whom it had been endorsed in the following words; "Pay to J. J. Poindexter, (signed) R. G. Hazard," by means whereof the legal title and right of action on said certificate, if it be a negotiable instrument, was vested in said J. J. Poindexter; nor does it appear by the copy filed, that it has ever been reconveyed to said R. G. Hazard, nor has this deponent any knowledge that it has been so reconveyed."

"Charles S. Boker, for a further affidavit in the above case, states, that he merely wrote his name on the back of the instrument of writing, a copy of which is filed in the above case, and that the words, "Pay to the order of T. T. & K. Leavel," have been since added, without the authority of this deponent."

Judgment was entered for want of a sufficient affidavit of defence."

Errors assigned:

1. The affidavit of defendant filed, and the supplement thereto, state a sufficient defence, and judgment ought not to have been given for the want of a sufficient affidavit of defence.

2. The copy of the instrument filed establishes no contract by Charles S. Boker, or other liability on his part, nor any cause of action whatsoever.

3. The instrument, a copy of which is filed, is not a negotiable instrument, and Charles S. Boker, by endorsing the same, incurred no liability.

4. The writing of the name of Charles S. Boker on the back of the instrument (a copy of which is filed) is in the nature of an assignment and not in the nature of an endorsement of a negotiable instrument.

5. The plaintiff in error, as it appears by the affidavit of defence, never wrote or authorized the writing of the words, " Pay to the order of T. T. & K. Leavel," which appear written over his name, and hence it does not appear that he intended to insert words making the instrument negotiable further than his own assignee.

6. The action is improperly brought in the name of William P. Hazard.

7. The mode in which the transfer is made by a simple endorsement, evinces an intention merely to transfer the credit. Had it been the contract of the parties that the plaintiff in error should have been liable on the default of the bank, he would have drawn a check instead of endorsing the certificate.

8. The affidavit of defence states that Charles S. Boker did not intend to incur any responsibility by the endorsement, and also his belief that the other parties did not receive the paper with any belief of his responsibility, or at all in consideration thereof. This concurrence of views constitutes the contract of the parties, and therefore no judgment should have been given.

These cases were argued at December term 1842, by *Gerhard* and *Randall*, for the plaintiffs in error; and *Bayard*, for the defendants in error: and were re-argued, at the present term, before the whole court, by *F. W. Hubbell* and *Randall*, for the plaintiffs in error, and *Bayard* and *Rawle*, contra.

For the *plaintiffs in error*, it was insisted that the instruments, copies of which were filed, were not promissory notes or bills of exchange or other negotiable instruments, the endorsement of which would render the endorsers liable, but merely certificates of deposit or acknowledgments of funds in the bank bearing interest, the assignment of which transferred the right to those funds to the holder on the contingency of his returning the certificates; and the following cases were cited. *Banbury* v. *Lisset*, (2 *Str.* 1211); *Dawkes* v. *Deloraine*, (2 *W. Bl.* 782); *Fisher* v. *Leslie*, (1 *Esp. R.* 426); *Israel* v. *Israel*, (1 *Camp.* 499); *Mullet* v. *Hutchison*, (14 *E. C. L. R.* 219); *Childers* v. *Boulnois*, (16 *Ib.* 411); *Payne* v.

[Patterson v. Poindexter — Boker v. Hazard.]

*Jenkins,* (19 *Ib.* 404); *Little* v. *Slackford,* (22 *Ib.* 280); *Horne* v. *Redfearn,* (33 *Ib.* 402); *Davies* v. *Wilkinson,* (37 *Ib.* 58); *Reeside* v. *Knox,* (2 *Whart.* 233); *M'Cormick* v. *Trotter,* (10 *Serg. & Rawle* 64); *Gray* v. *Donahoe,* (4 *Watts* 410); *Snevily* v. *Ekel,* (1 *Watts & Serg.* 203); *Hopkins* v. *R. Road Co.,* (3 *Ib.* 410); *Frevall* v. *Fitch,* (5 *Whart.* 325); 2 *Yerger* 50; 2 *M. & S.* 473; 7 *Meeson & Wels.* 410; 2 *Fairf.* 377; *Rhodes* v. *Lindly,* (*Ohio Cond. R.* 465); *Jones* v. *Fales,* (4 *Mass.* 245); 24 *Pick.* 423; *Fahnestock* v. *Schoyer,* (9 *Watts* 102); 2 *Pet.* 331; 4 *Wash. C. C.* 480; *Sharp* v. *Emmet,* (5 *Whart.* 288); 1 *Hill* 583; 2 *Miles* 442; 2 *Rose's Cas. Bank.* 225; 2 *Mood. & Rob.* 267; 2 *B. & P.* 413; *Stevens* v. *Hill,* (5 *Esp.* 247); *Chitty on Bills* 63, 64, 135, 136; *Lockhart* v. *Bank U. S.,* (2 *Watts & Serg.* 443); *Comly* v. *Bryan,* (5 *Whart.* 265); *Rising* v. *Patterson,* (5 *Ib.* 316); *Sleeper* v. *Dougherty,* (2 *Whart.* 177); *Weakly* v. *Bell,* (9 *Watts* 278); *Gorgerat* v. *M'Carty,* (2 *Dall.* 146); 4 *Hill* 444; *Craig* v. *Brown,* (1 *Pet. C. C.* 171); *Stephens* v. *Cowan,* (6 *Watts* 512).

For the defendants in error, it was argued that the instruments in question were negotiable instruments, whether called notes or bills of exchange or checks, being an absolute promise to pay money at a certain time, and acknowledging the receipt of a valuable consideration; and the following cases were cited: *Dewey* v. *Dupuy,* (2 *Watts & Serg.* 555); *Bank U. States* v. *Thayer,* (*Ib.* 447); *Morris* v. *Foreman,* (1 *Dall.* 193); 3 *Wash. C. C.* 404; *Gorgerat* v. *M'Carty,* (2 *Dall.* 144); 3 *Wheat.* 173; 12 *Louis.* 619; 6 *Cow.* 449; *West* v. *Simmons,* (2 *Whart.* 261); *Stat.* 3 *and* 4 *Anne, ch.* 9, *sec.* 1; *Leidy* v. *Tammany,* (9 *Watts* 356); *Chitt. Bills* 557–560, *chap.* 12, *sec.* 4; *Ib.* (1842) 126; *Bayl. Bills* 3–6; *Byles Bills* 34, 5, 6, 50; 3 *Kent* 74–77; *Cashborne* v. *Dutton,* (1 *Selw. N. P.* 381, 9*th ed.*); *Chadwick* v. *Allen,* (2 *Stra.* 706); *Morris* v. *Lea,* (*Ld. Raym.* 1396); *Kimball* v. *Huntington,* (10 *Wend.* 675); *Russell* v. *Whipple,* (2 *Cow.* 536); 14 *Johns.* 238; *Goshen Turnpike* v. *Hurtin,* (9 *Ib.* 217); *Pepoon* v. *Stagg,* (1 *Nott & M'C.* 102); *M'Clarin* v. *Nesbit,* (2 *Ib.* 519); *Green* v. *Davies,* (10 *E. C. L.* 319); 7 *Ib.* 258; 2 *Mee & W.* 74; 7 *Ib.* 410; *Ellis* v. *Ellis,* (*Gow* 216); *Hansard* v. *Robinson,* (14 *E. C. L.* 20); 1 *Hill* 295; 2 *Hill* 295; *Ib.* 59, 62; *Chitt. Bills* (1836) 218, 219; 3 *Kent* 75; 6 *Wend.* 445; *Blymire* v. *Boistle,* (6 *Watts* 182).

The opinion of the Court was delivered by

Gibson, C. J.—The application of a few plain principles will determine the character of the paper before us. In the first place, nothing is a promissory note in which the promise to pay is merely inferential; or, as Mr Justice Bosanquet expressed it in *Horne* v. *Redfearn,* (6 *Scott* 267), in which there is " no more than a simple acknowledgment of the debt, with such a promise to pay as the

law will imply." What more have we in the paper before us ? "I hereby certify that C. S. Tarply has deposited in this bank, payable 12 mo's from 1st May 1839, with five per cent. int. till due, per ann., $3691\frac{63}{100}$ dollars," is the language, not of a promissory note within the statute of Anne, but of a certificate of deposit on special terms. The argument for the endorsee is that the word " payable," which is repeated, constitutes an express promise to pay. If that were its office, its repetition would have been unnecessary. But the words " yielding and paying," which are certainly more pointed, because they serve to indicate the fact of payment, and not, as here, the existence of circumstances connected with it, have been held to create no more than an implied covenant in a lease; and though there are conflicting decisions on the point, the weight of authority inclines to the side of implication. Serjeant WILLIAMS treats the law as if it were so settled in *Thursby* v. *Plant*, (1 *Saund.* 231, note 5). Independent of that, we must look at the word to discover the sense in which it was used by the parties, not to ascertain how far it will bear to be strained by construction; and it is obvious that being used in the first instance in connexion with words of time, its office was not even to acknowledge a debt, for that was done more directly by the certificate of deposit; but to specify the day when the depositors should have their money again, with interest for the use of it in the mean time. Nor do the superadded words, " for the use of R. Patterson & Co., and payable only to their order upon the return of this certificate," make the case a jot the stronger. The agent of the Messieurs Patterson deposited their money under a stipulation that it should be returned to their special order, on presenting the certificate, with interest at a day certain. The word " payable" was introduced a second time, evidently not to create an express undertaking, but to add a condition to the undertaking which was implied by the law. It was to restrain the generality of the implied obligation, and not the more explicitly to enunciate it. What more was it designed to express, than would have been expressed by the word " returnable"? Yet that word would no more create an express promise than would the word " accountable," which was not allowed to have that effect in *Horne* v. *Redfearn*. The word " payable" naturally expresses no more than that the thing of which it is predicated is the subject of payment; and where the parties have used it in its natural sense, by what authority shall we, who profess to be guided by the intention as the polar star of interpretation, say that they have used it in a different one?

But though the word were taken for an express promise, it would not sustain the action, unless it were taken also for an absolute and unconditional one; and a promise to pay on the return of the certificate would have been contingent. True it is that such a contingency is no more than is implied in every promissory

[Patterson v. Poindexter—Boker v. Hazard.]

note; for ordinarily there can be no recovery at law where the paper is lost or mislaid, though there may be a recovery in equity, indemnity being given; but it is, to say the least, doubtful whether a chancellor could relieve against the express terms of a contract imposing nothing like a penalty. Be that as it may, it is enough for the defence that the bank did not consent to pay on the bare order of the depositors, however signified; but on the foot of the certificate itself. Had it been contemplated that the ownership of the deposit should be transferable only by endorsement of the certificate, like that of a promissory note, such a condition would have been useless; for the endorsement would have been insepa-rable from the certificate, and could not have been presented without it; but not so a check to which the provision was intended to apply. It was doubtless understood that the ownership of the deposit might pass indifferently by check or endorsement; and it was doubtless to provide against inconsistent transfers and conse-quent embarrassment of the bank as a stakeholder between anta-gonist claimants, that a condition was introduced, which was as foreign to the terms of a promissory note, as would be a condition to pay out of a particular fund.

Again: The agreement for interest is a special one. The money was deposited on the 2d July 1839, "payable 12 mo's from 1st May 1839, with 5 pr. ct. int. till due;" and if the parties intended to reserve interest only from the date, why did they not say so, and name the ensuing 1st of May as the day of payment? They seem to have agreed that interest should be calculated from a day past, because for no other purpose than to express such an agree-ment was it necessary to recur to a day past. Had it been in-tended to designate the ensuing 1st of May as the day of payment, and to reserve interest from the date, it would have been much more easy to say so in terms than by circumlocution. A promis-sory note, though constituted by no precise form of words, is a plain, unambiguous and unconditional promise to pay, and is so described in all the transatlantic authorities.

It is argued that those authorities have been warped by the statutes which impose stamp-duties on notes, which, by reason of their penal tendency, are to be construed benignly. In only one of them, however, is there a definition of the instrument; the others left it to be dealt with as it stood under the statute of Anne. By the 5 G. 3, c. 184, "all receipts for money deposited in any bank, or in the hands of any banker or bankers, which shall con-tain any agreement or memorandum importing that interest shall be paid for the money so deposited," shall be deemed to be promis-sory notes within the purview of the statute; and it is because we have no such statute here that we hold this certificate not to be negotiable. It will be perceived that the legislation on the subject widened rather than narrowed the frame of the instrument, as it

VI. — 30. U*

was originally constituted; and that it was the duty of the judges to follow out, rather than evade the policy of the Legislature, for the suppression of those frauds which we are told by Chief Justice TINDAL in *Horne* v. *Redfearn,* had been practised on the revenue. They must consequently be supposed to have held everything to be a promissory note, which could by any reasonable construction be brought within the range of the statutes. Mr Dwarris (*Treatise on Statutes* 736) says that penal statutes are taken literally only in the point of defining and setting down the fact and the punishment; and for the position that the court is not to narrow the construction of them, he quotes the words of Mr Justice BULLER in *Rex* v. *Hodnett,* (1 *T. R.* 96): "We are to look to the words in the first instance, and where they are plain we are to decide on them. If they are doubtful, we are to have recourse to the subject-matter." As the letter of no statute was in the way of a liberal construction, the judges were doubtless disposed to adopt it so far as the words of the statute of Anne would bear. But before the 22 G. 3, c. 33, no stamp-duties were imposed on bills or notes; and the series of decisions which established that a promissory note must be for a sum of money payable absolutely, and not contingently either as to amount, person, event or fund, began even in the reign of William the Third. It was not the penal consequences of the Stamp Acts, there, but the convenience of commerce, which compressed bills and notes into the fewest words, importing a general undertaking, unclogged with conditions.

It is argued, however, that whatever be the character of the certificate, the endorsement of it is effectively a bank-check, which has most of the properties of an inland bill. But not to insist on the rule that a check be payable to bearer on demand, it is essential that it be not merely an endorsement to order, but a request addressed to the bank to pay, on presentment, a specified sum of money; and in these particulars an endorsement is deficient. The sum requested to be paid could be ascertained only by reference to the sum specified in the body of the writing, and by making the certificate a part of the supposed check; thus turning it from a certificate of deposit into, not indeed a promissory note, but what it less resembles, an inland bill of exchange. None but a commercial instrument is a subject of reference for the terms of an endorsement. True it is that the endorser of a note without negotiable words is responsible on the contract by reason that the endorsement is a new drawing. But such a note is nevertheless within the statute of Anne, and may be declared on as such. That the endorsement of a specialty is followed by no commercial responsibility, was determined in *Frevall* v. *Fitch,* (5 *Whart.* 325), which is decisive of this part of the case. The contract of endorsement is not an independent one, but a parasite which, like the chameleon, takes the hue of the thing with which it is connected.

Attached to commercial paper, it becomes a commercial contract operating as a contingent guaranty of payment, and a transfer of the title where the paper is negotiable: attached to any other chose in action, it becomes an equitable assignment of the beneficial interest without recourse to the assignor. Now, that the instrument before us is not a commercial one, is decisive of the cause. For purposes of transfer merely, it was payable to order; for purposes of commercial responsibility, it was not negotiable. It was a special agreement to pay the deposit to any one who should present the certificate and the depositor's order. Why was it held in *Little* v. *Slackford,* (1 *Mood. & Malk.* 171), that the words " Mr L., Please to let the bearer have £7, and place it to my account," did not constitute a bill of exchange? Lord Ten-terden said it was because the request did not purport to be a demand by one having a right to order. A better reason seems to be that the tone of the request did not indicate a willingness to incur the responsibility which ensues from the drawing of such a bill. The endorsement on this bill is still less indicative of it, and no more resembles a banker's check than would the endorsement of an entry of deposit in a bank-book. As the decision on this point is conclusive of the whole matter, it relieves us of the objection to the action on the ground of parties.

Judgment reversed, and a *procedendo* awarded.