# CIRCUIT COURT

OF

## THE UNITED STATES,

DISTRICT OF CONNECTICUT, APRIL TERM, 1808.

PRESENT, THE HON. { BROCKHOLST LIVINGSTON. PIERPONT EDWARDS.

---

April, 1808. GEORGE CODWISE, jun. PETER LUDLOW and JAMES CODWISE *against* CHAUNCEY GLEASON, ELIJAH COWLES, JONATHAN COWLES, GAD COWLES, SETH COWLES and MARTIN COWLES.

*Though a note is void as against the maker, it may be good against an endorsor, in favour of an endorsee, who took it relying upon the endorsement.*
*The contract made by endorsement, extends to all future endorsees, even where notes are not negotiable.*

THIS case was argued on a plea in abatement, at the last term; a *respondeas ouster* was ordered; and the case continued to this term, for trial on the merits.

The declaration having been already stated at length, it may be sufficient to refer to that statement,(a) without repeating it here; but the case will be better understood by a statement of the following facts, in addition to those which appear on the declaration:

*Erastus Gay* made a contract for a title to some *Georgia* lands with *Peleg Sanford* and another person, according to the terms of which he was obliged to give them a note for nine hundred and forty-five dollars,

(a) *Ante*, p. 3.

payable at the *Hartford* bank, with a good endorsor. To comply with this contract, *Gay* induced *Gleason & Cowles* to endorse the note in question; and after it was so endorsed, he delivered it to *Sanford*. It was then sold to *Timothy Burr*, but without any endorsement; and by him it was again sold to *Codwise, Ludlow & Co.* for goods, and without any endorsement by *Burr*. It was afterwards endorsed by *Codwise, Ludlow & Co.* and sent to *John Dodd* of *Hartford* for collection, and by him endorsed and lodged in the bank. As it was not paid when it became due, demand was made of *Burr*, as well as of *Gay*, and *Gleason & Cowles*. After the note was taken from the bank, the names of *Codwise, Ludlow & Co.* were erased, they having been entered merely for the purpose of collection. The suit in the name of *Gleason & Cowles* against *Gay*, failed on the ground of fraud, and, consequently, of want of consideration in the contract, to comply with which the note was given. An action was then brought against *Burr* by *Codwise, Ludlow & Co.*, in which they claimed to recover of him as having *sold*, and thus become responsible for the note. His defence was, that though he sold, he did not *warrant* the note, but that it was received by the plaintiffs entirely at their own risk. That suit also failed; and the present action was immediately commenced.

On the trial, after all the material facts alleged had been either admitted or proved, the counsel for the defendants offered evidence to prove, first, that this endorsement was not intended to give a general credit to the note; and, secondly, that the plaintiffs were, in reality, remote endorsees.

*Daggett*, for the plaintiffs, objected to the testimony.

This endorsement by *Gleason & Cowles* needs no explanation. It admits of none. No evidence, as to the inten-

April, 1808.<br>CODWISE<br>v.<br>GLEASON.

April, 1808.

CODWISE
v.
GLEASON.

tion of the parties, can alter the legal nature of the instrument. This note appears to have been sent into the world under the sanction of the names of *Gleason &*
*Cowles.* So merchants would universally understand it, and so courts will consider it.

LIVINGSTON, J. Evidence that *Gleason & Cowles* endorsed the note, and gave it back to *Gay,* in order to give him credit; and that they never negotiated it, may have some important bearing on the case. Perhaps the same fraud which procured the note to be given, was used in obtaining the endorsement; and, if so, it may be properly laid before the jury. The evidence may, therefore, be heard.

In the argument of the case, *Ingersoll* and *Griswold,* for the defendants, contended,

1. The plaintiffs cannot recover, because the note has been decided by a competent tribunal to be void. The endorsement must of course be void. The endorsement is in the nature of security; and where notes are not negotiable, it can be viewed in no other light. It is the same thing, then, as if *Gleason & Cowles* had signed this note with *Gay,* as his sureties. And it must be acknowledged that a surety cannot be holden, when the obligation of his principal is void.

2. From the testimony which has been let in, it appears that the plaintiffs are remote endorsees, and the defendants never endorsed the note to them. There is no privity of contract between the plaintiffs and defendants. To decide that upon these facts the defendants are liable to the plaintiffs, would be giving to an endorsement all the efficacy which it has where notes are negotiable. On this principle, an endorsor can alter the nature of an in-

strument, and make that negotiable which was not so in its creation; which is absurd.

*Daggett*, for the plaintiffs.

1. The contract of the endorsor is, in every case, that the sum contained in the note shall be paid when due, and for this payment he pledges himself to be responsible. It makes no difference whether the note is not paid by the maker because he is unable, or because the instrument is void, or on account of any other impediment in the way of collection. Let the cause of failure of payment be what it may, the endorsor is liable. If the note is forged, the endorsor is still holden; and in a suit against an endorsor it is not necessary to prove the hand-writing of the maker.

2. Nor is the contract made with the *next* endorsee only. It extends to all future endorsees. An endorsement in blank is a letter of credit to the whole world; and every man who trusts to it, can recover of the endorsor. This principal is clearly illustrated and supported by the case of *Russel* v. *Langstaffe*, *Doug.* 514. where Lord MANSFIELD declared, that the defendant, by endorsing blank copper-plate checks, gave a letter of credit for an indefinite sum; and that it did not lie in his mouth to say the endorsements were not regular. Indeed, this is a direct authority to both points; for it not only decides the general liability of endorsors on account of having given their names to the world, but declares farther, that the endorsor is holden, though the paper endorsed was, at the time, a mere nullity.

LIVINGSTON, J. directed the jury, that as to the first point, though he had had doubts, they were almost entirely removed. If a note were forged, the endorsement would bind the man who made it.

The second point he declared not to have altered the decision of the case from what it would have been, if the plaintiffs were the only endorsees, and the defendants the only persons through whose hands the note had passed. *Gleason & Cowles* gave the weight of their names to the world, and must be responsible to every man who trusts to the note relying on their credit, as every subsequent endorsee must be supposed to do, from the nature of the transaction. The case is, therefore, clearly with the plaintiffs on both points.

A verdict was accordingly found for plaintiffs to recover 1,599 dollars and 20 cents damages.