# Leidy *against* Tammany.

A blank endorsement of a note, in its terms not negotiable, after it becomes due and payable, creates such a liability of the endorser as that the endorsee may maintain an action against him in his own name.

ERROR to the common pleas of *Centre* county.

This was an action of assumpsit by George Leidy, endorsee of J. M. Benner and Philip Benner, who were endorsees of Miles &

Kephart against Henry F. Tammany, founded upon the following note:

$600    Ten days after date I promise to pay H. F. Tammany, six hundred dollars, for value received.

MILES & KEPHART.

May 31, 1835.                          Pr. WM. W. MILES.

After this note became due and remained unpaid, an interview took place between Leidy, Benner and Tammany, in which Tammany proposed to give the note to Leidy; and, to induce him to take it, wrote his name upon it. Benner and Leidy still objected to it, and Miles & Kephart were called upon, and they promised to pay the note by a certain time at which Benner wanted the money. Tammany then said, that if Leidy would take the note then, he would cash it before the time mentioned, and they should have no trouble about it. Tammany did not pay the money at the time, but again promised to send a check for it to Benner, to whom Leidy had given the note, which he did not do. Benner then returned the note to Leidy, who instituted this suit.

The plaintiff's declaration contained five counts: the first two against the defendant as endorser of the note; the first alleging that Tammany, after the note had become payable and remained unpaid, endorsed and delivered it to Benner, who delivered it to Leidy;—the second that after the note became due, endorsed and delivered it to Leidy. The third was for money lent, paid, laid out and expended by the plaintiff for the defendant. The fourth for money had and received; and the fifth upon an *insimul computassent*. To which the defendant pleaded *non assumpsit* and payment, &c.

The only question in the cause was, whether the plaintiff, George Leidy, could, as endorsee, maintain this action in his own name. The court below instructed the jury that he could not, and directed a verdict for the defendant.

*M'Allister*, for plaintiff in error, cited *Chit. on Bills* 181; 6 *Term Rep.* 124; *Byles on Bills* 50, 51; 2 *Burr.* 674; 1 *Salk.* 132; *Chit. on Bills* 219; 4 *Mass. Rep.* 254; 3 *Day* 12; *Byles on Bills* 127; *Bayly on Bills* 93; 6 *Wheat.* 151; 3 *East* 431.

*Blanchard*, for defendant in error, cited 2 *Burr.* 1226; 1 *Dall.* 195; 2 *Dall.* 252; 1 *Yeates* 360.

The opinion of the court was delivered by

KENNEDY, J.—This action was brought in the common pleas of Centre county, by George Leidy, as the endorsee of a promissory note, against Henry F. Tammany, the payee and endorser of it. The note was dated on the 31st of May 1835, and drawn by Miles & Kephart, for six hundred dollars, payable, ten days after its date, to Tammany for value received, without any words of negotiability

[Leidy v. Tammany.]

being inserted in it. The plaintiff filed a declaration, containing five counts; the first two against the defendant as endorser of the note: the first count alleging that Tammany, the defendant, after the note had become payable, but the same being still unpaid, on a certain day mentioned therein, endorsed and delivered it to J. Matlack Benner and Philip Benner, who delivered it to Leidy, the plaintiff; the second count, stating that Tammany, after the note had become due, but still remaining unpaid, on a given day, endorsed and delivered it to Leidy, the plaintiff. The third count is for moneys lent, advanced, paid, laid out and expended by the plaintiff for the defendant. The fourth count for money had and received by the defendant for the use of the plaintiff; and the fifth count upon an *insimul computassent*. From the evidence given on the trial, it appeared that, after the note had been due some time, it was endorsed by Tammany, and delivered to Leidy, who, at the same time, delivered it to J. Matlack Benner and Philip Benner. But, previously to the delivery of it to Leidy by Tammany, though after the latter had endorsed it, it was presented to Miles & Kephart for payment, who refused to pay; upon which Tammany said he would pay the note himself before the money should be wanted, and thereupon Leidy accepted the note. Upon failure, however, of Tammany to pay according to his promise, as well as Miles & Kephart, the Benners returned the note to Leidy, and he then instituted this action.

Upon the trial of the cause, the defendant's counsel requested the court to instruct the jury that the plaintiff could not maintain this action as endorsee of the note against the defendant as the endorser of it, because the note was not negotiable, and because he had no interest which he could pursue as endorsee. The court accordingly instructed the jury that the endorsement of the note by Tammany did not give it a negotiable character, so as to enable the plaintiff to sue as endorsee; but said, had the note been made negotiable, there would have been a sufficient right in the plaintiff to have brought the action, and that the facts disclosed would not have prevented a recovery. The plaintiff's counsel thereupon excepted to this instruction of the court below, and has assigned it for error here. It is said that the advancement of commerce in its progress and the increased multiplicity of its concerns, which required a mode of payment and of obtaining credit less complicated than through the medium of bills of exchange, to which there are, in general, three parties, gave rise to promissory notes. *Kyd on Bills* 18; and *Chitty on Bills* 414, 415, (5th Lond. ed.) As for instance a trader, whose situation and circumstances rendered credit from the merchant or manufacturer, who supplied him with goods, absolutely necessary, might have so limited a connection with the commercial world at large, that he could not easily furnish his creditor with a bill of exchange on another, but his own responsibility might be such that *his engagement* to pay, *reduced to*

*writing*, might be accepted with the same confidence as a bill on another. These instruments, however, though favoured by some of the judges, were opposed by Lord Holt, who held that no action could be maintained on a promissory note, that it was only to be considered as evidence of a debt at most. See Clerke v. Martin, 2 *Ld. Raym.* 759; S. C. 1 *Salk.* 129; Story v. Atkins, 2 *Ld. Raym.* 1430; Trier v. Bridgman, 2 *East* 359; Walmsley v. Child, 1 *Ves.* 346. And in Buller v. Crips, 6 *Mod.* 29, 30, the judgment, which was for the plaintiff in an action on a promissory note, was reversed on the ground that the custom alleged in the declaration was void, since it tended to bind a man to pay money without any consideration. So that the authority and weight of Lord Holt's opinion prevailed in Westminster Hall, and led to the passage of the statute of 3 and 4 Anne, c. 9, (made perpetual by 7 Anne, c. 25, sect. 3.) Grant v. Vaughan, 3 *Burr.* 1520; Brown v. Harraden, 4 *Term Rep.* 151. In passing this statute, the legislature would appear, from its terms, to have had two objects in view: first, to make promissory notes, drawn for the payment of money to any person or order, or unto bearer, assignable or endorsable over, *in the same manner as bills of exchange* are or may be, according to the custom of merchants, so as to enable the endorsee or bearer to maintain an action in his own name against the drawer, upon the note, in such manner as he might do upon any inland bill of exchange, and thus to bring the note, in this respect, within the custom of merchants; and, secondly, to enable the endorsees or holders of such notes to maintain actions against the drawers or any of the endorsers thereof, *in like manner as in cases of inland bills of exchange.*

The *negotiability* of bills of exchange was perhaps the only reason why the English courts allowed, in their favour, an exception to the common law rule, which opposed the assignment of *choses* in action, and rendered the assignment thereof unavailable; and for this reason, as also from the words of the act, most likely it was once thought that, unless notes were made assignable by their terms, they could not have any greater effect than that of being evidence of a contract. Dawkes v. Lord de Lovane, 3 *Wils.* 211; *Chitty on Bills* 85, 86, (5th Lond. ed.) But courts, looking upon the statute of Anne as a remedial act, therefore, under a liberal construction, extended it to notes not made transferrible by their tenor, so that they were deemed to be valid as mercantile instruments without words of negotiability being inserted in them. Smith v. Kendall, 6 *Term Rep.* 123; S. C. 1 *Esp. Rep.* 231; The King v. Box, 6 *Taunt.* 328; Burchill v. Slocock, 2 *Ld. Raym.* 1545; Moore v. Paine, *Rep. Temp. Hardw.* 288; Ewers v. Blanchin, 1 *Lutw.* 231; Morrison v. Cary, *Ibid.* 277; *Clift. Ent.* 916; *Chitty on Bills* 86, (5th Lond. ed.) The same principle has been recognized in the United States. Downing v. Backenstoes, 3 *Caines* 137; Goshen Turnpike v. Hurtin, 9 *Johns.* 267; Leonard v. Mason, 1

[Leidy v. Tammany.]

*Wend.* 522; Jones v. Fales, 4 *Mass. Rep.* 245; Codwise v. Gleason, 3 *Day* 12. But although, in general, without the words "or order" or "bearer" being inserted in the note or bill, the payee cannot assign it, so as to enable the assignee to maintain an action upon it in his own name against any of the parties to it except the endorser himself, yet it seems to be now well settled that the endorsee of a bill or note not negotiable, may, after demand of payment from the acceptor of the bill or maker of the note, and a neglect or refusal on the part of the acceptor or maker to pay, maintain an action against the endorser; so that, as against him it will have the same operation as if he had the power to assign. This was adjudged in the case of Hill v. Lewis, 1 *Salk.* 132, shortly after the passage of the statute of Anne; because, as it is said, the act of endorsing is equivalent to that of a new drawing. In Ballingalls v. Gloster, 3 *East* 482, 483, Lord Ellenborough observes: "there is no distinguishing the case of an endorser from that of the drawer, it having been long ago decided that every endorser is in the nature of a new drawer, every endorsement as a new bill, and that the endorser stands, as to his endorsee, in the law merchant, the same as the drawer." The doctrine thus laid down by his lordship seems to be fully sustained by the cases of Smallwood v. Vernon, 1 *Stran.* 479; Hodges v. Stewart, 1 *Salk.* 125; Anon. *Skinner* 343; and M'Carty v. Barrow, as cited in 3 *Wils.* 16, which are referred to in the margin of the book. In Smallwood v. Vernon, the court say, "every endorsement of a note is the same as making a new note, so that if the note itself be payable the 1st of May, and the endorsement appoints the 1st of April, as to the endorser, this is a promissory note payable the 1st of April." So upon this principle I take it the supreme court of the United States, in the case of Slocum v. Pomroy, decided that the endorsement of a bill or note is not merely a transfer of the same, where it is negotiable, but is likewise a new and substantive contract. In Brown v. Davis, 3 *Term Rep.* 83, Mr Justice Buller says, "when the note has been endorsed after it becomes due, I consider it as a note newly drawn by the person endorsing it;" to which Lord Kenyon assented. It is, therefore, clear, from the authorities cited, that every endorsement of a note, especially after it has become payable, whether it be negotiable in its tenor or not, is considered, as between the endorser and the endorsee, as a new note. But I would ask, why may it not be regarded also in the light of a bill of exchange drawn by the endorser upon the maker of the note, in favour of the endorsee? for the endorsement is, in truth, an order drawn by the endorser upon the maker of the note, to pay, on his account, the money specified therein to the endorsee; and this meets the definition of a bill of exchange precisely, as given by Sir William Blackstone and others. "A bill of exchange," says he, "is defined to be an open letter of credit, or an order from one person to another, desiring him to pay, on his account, a sum of money

[Leidy v. Tammany.]

therein mentioned, to a third person." 2 *Black. Com.* 466. And is in effect, as Mr Chitty says, an assignment to a third person of a debt due to the person drawing the bill from the person upon whom it is drawn. And Lord Mansfield in Heylin v. Adamson, 2 *Burr.* 676, likens the endorsement of a note to a bill of exchange. "While a promissory note," says he, " continues in its *original* shape of a promise from one man to pay another, it bears no similitude to a bill of exchange, *when* it is *endorsed* the *resemblance begins;* for *then* it is an *order*, by the *endorser upon the maker of the note, to pay the amount thereof to the endorsee.*" And then he adds, " this is the very definition of a bill of exchange." After having thus shown the resemblance between the endorsement of a note and a bill of exchange, he proceeds and shows that the liability of the endorser of a note is the same under his endorsement of it, with that of the drawer of a bill of exchange; that the terms and conditions upon which either is made liable to pay are precisely the same. And, besides, it is said to have been decided, that a promissory note endorsed, may be declared on as a bill of exchange. Brown v. Harradon, 4 *Term Rep.* cites for this, Buller v. Cripps, 6 *Mod.* 29, 30. See also Crenshaw v. M'Kiernan, 1 *Minor's Alabama Rep.* 392; Aldis v. Johnson, 1 *Verm. Rep.* 136. In this last case the endorsement of a note, not negotiable, was considered, as between the endorser and endorsee, a bill of exchange. It would seem then that the endorser of a note, though not negotiable, may, upon the ground of authority, as also from the tenor and design of the endorsement itself, be considered and treated either as the drawer of a bill or of a new note, and made liable as such to pay the amount thereof. That he may be made liable to pay as the drawer of a new note in such case, we have an authority of our own, in the Bank of North America v. Barriere, 1 *Yeates* 360. *That case was* not unlike the present. There it was held that an endorsement made in blank of a promissory note, after it became due, and payment, on demand thereof, had been refused, as was the case here, amounted to an original undertaking, as a note newly drawn by the endorser in favour of the holder of the old note. M'Kean, C. J., in delivering the opinion of the court says, " Every endorsement of a bill of exchange is considered as a new bill. After the day of payment in a note has expired, the endorser cannot be looked on otherwise than as a new drawer." Thus recognising and acting upon the doctrine laid down and established by the English authorities in this respect. The defendant here endorsed and delivered the note after it became due, and after a demand of payment made on the drawers, and a refusal on their part to pay, which brings him completely within the case of Barriere. The endorsement here is also in blank, as was the case in Barriere; and may, therefore, be considered as a letter of credit, addressed to all the world, or, at least, to whomsoever he might be, who should thereafter become the holder of the note; leaving it to the latter to fill up the order

[Lcidy v. Tammany.]

or indorsement, either making it payable to himself alone or to his order, or to bearer, and if not paid by the maker, then to bring suit for the recovery of the money, in his own name, against the endorser. And so it has been decided, where the first endorsement on a bill or note is made in blank, that it will, as against the payee, drawer or acceptor, be assignable afterwards by mere delivery, notwithstanding subsequent endorsements *in full* have been made on it. Smith *v.* Clarke, *Peake* 225. An endorsement in blank is, in effect, an endorsement or order to pay to *bearer*, and will entitle a *bona fide* holder for valuable consideration to receive the amount of the note, though it should have been stolen after such endorsement, and before it came into the hands of such holder. Peacock *v.* Rhodes, *Doug.* 611, 633. Then supposing Leidy, the plaintiff, had not been the person to whom Tammany, the defendant, after having endorsed the note in blank, delivered it, but that he had delivered it to J. M. Benner and P. Benner, and they, after endorsing it, had delivered it to the plaintiff, still it was competent for the plaintiff to strike out the names of the Benners, and to write an endorsement in full to himself over the name of the defendant; so as to make the defendant his immediate endorser, and thus create a privity of contract between them. Smith *v.* Clarke, *Peake* 225; S. C. 1 *Esp.* 180; Anon. 12 *Mod.* 345; Chalons *v.* Bell, 4 *Esp.* 120. Per Bayly, J., in Williamson *v.* Johnson, 2 *D. & R.* 283; S. C. 1 *B. & C.* 146; Morrison *v.* Foreman, 1 *Dall.* 193; *Chitty on Bills* 175, 176, (5th Lond. ed.) If any thing were necessary in order to support the second count in the declaration, which avers the endorsement and delivery of the note to have been by the defendant to the plaintiff, it may be considered as done. And in Connecticut it has been determined, that the contract, arising out of the endorsement, extends to all future endorsees, whether the note be negotiable or not, and that an action may be maintained by the endorsee against a remote endorser. Codwise *v.* Gleason, 3 *Day* 12. See also Wilkinson *v.* Nicklin, 2 *Dall.* 296.

Having shown above how privity of contract may be considered as existing, in this case, between the plaintiff and defendant, under any aspect in which it can be presented, it would seem to follow indisputably that the defendant, whether he be looked upon as the drawer of a new note to the plaintiff, or drawer of a bill of exchange in his favour, may be held liable also to the plaintiff on the money counts in the declaration. The count for *money lent* is proper, as has been repeatedly said by some of the highest judicial characters, in an action at the suit of the payee against the drawer of a bill of exchange, and in an action at the suit of the payee of a note against the maker, to either of which it has been shown that this case may be likened; because they are evidence of money lent by the payee to the drawer of the one and maker of the other. Per Bayly, B., in Morgan *v.* Jones, 1 *Tyrw.* 29; per Lord Ellenborough, in Marshall *v.* Poole, 13 *East* 100; Story *v.* Atkins, 2

*Stran.* 725, Clerke *v.* Martin, *Ld. Raym.* 758; Carter *v.* Palmer, 12 *Mod.* 380; Grant *v.* Vaughan, 3 *Burr.* 1516, 1525; Smith *v.* Kendall, 6 *Term Rep.* 124. And in an action at the suit of the endorsee against his immediate endorser, as here, it has been held that the plaintiff may recover upon a count for money lent. Keesebower *v.* Tims, *K. B.* 22 *Geo.* 3; *Bailey on Bills,* 5th ed. 359, note 60.

Judgment reversed, and a *venire de novo* awarded.