DE HASS v. DIBERT (two cases).

SAME v. ROBERTS.

(Circuit Court of Appeals, Third Circuit. October 24, 1895.)

Nos. 24, 25, and 26.

1. COMMERCIAL PAPER.

An instrument made in Kansas contained a promise to pay to K. or order, for value received, $3,000, five years after date, with interest at 8 per cent., payable semiannually according to the tenor of interest coupons annexed, together with an agreement that the instrument should be governed by the laws of Kansas, where it was made payable; that the "note" and coupons should draw 12 per cent. interest after maturity, and should all mature upon default on any coupon; and a recital that the instrument was secured by mortgage on real estate. *Held,* that this was a negotiable commercial instrument.

2. SAME—LIABILITY OF INDORSER.

When a negotiable note is assigned by the payee, without indorsement, and is afterwards indorsed by the assignee to a third party, such indorser is liable upon his indorsement to his indorsee, though the original assignment has relieved the maker from his promise to pay "to order," and subjected the paper to defenses by him in the hands of subsequent indorsees.

In Error to the Circuit Court of the United States for the Western District of Pennsylvania.

These were three actions by Elizabeth G. De Hass against Kate R. Dibert, as administratrix of John H. Dibert; Martha Dibert, as administratrix of John Dibert; and John B. Roberts, as surviving partner of John Dibert & Co.,—upon the indorsement of a promissory note. Judgment was rendered in the circuit court for the defendants. 59 Fed. 853. Plaintiff brings error. Reversed.

T. W. Shreve, for plaintiff in error.
Robert S. Frazier, for defendants in error.

Before DALLAS, Circuit Judge, and BUTLER and WALES, District Judges.

BUTLER, District Judge. The suits were brought on indorsements of a promissory note and its accompanying interest coupons; and by agreement of parties were tried together. After a jury had been sworn, a paper was filed consenting to a verdict for the plaintiff in $3,837.60, subject to the opinion of the court on the following questions reserved:

"First: Whether under the evidence, to wit, the writing sued on, and the attached guaranty and the mortgage securing said obligation, and the writing

sued on, dated the 15th day of June, 1887, for $3,000, payable to the order of John D. Knox & Co., is a negotiable commercial instrument.

"Second: Whether the indorsement of John Dibert & Company after the assignment, without recourse made by John D. Knox & Company, the payees, upon the writings sued pro ut, same in evidence, made the said John Dibert & Company liable as indorsers of negotiable commercial paper, the transfer from John D. Knox & Co. to John Dibert & Co., and the transfer of John Dibert & Co. to F. S. De Haas, having been made in the state of Kansas.

"Third: Whether the plaintiff is entitled to recover interest at the rate of twelve per cent. per annum from the date of protest of the writings sued on to the date of verdict, the law of Kansas authorizing the making of contracts bearing such rate of interest."

The court filed an opinion in the plaintiff's favor as respects the first question, in the defendants' favor as respects the second, and entered judgment for the latter.

The promissory note sued on and accompanying interest coupons, with the indorsements thereon, are as follows:

"Know all men by these presents: For value received we promise to pay John D. Knox & Co., on order, $3,000.00 lawful money of the United States, 5 years after date hereof, with interest thereon at the rate of 8 per cent. per annum, payable semiannually on the 15th day of December and June in each year, according to the tenor of 10 interest coupons for $120.00 each, hereto annexed and bearing even date herewith.

"Said principal and interest being payable at the banking house of John D. Knox & Co., Topeka, Kan. It is expressly declared and agreed that this note and coupons hereto attached are made and executed under, and are to be construed by, the laws of the state of Kansas, in every particular, and are given for an actual loan of $3,000.00. This note and these coupons are to draw 12 per cent. interest per annum after maturity, and are secured by a first mortgage on real estate.

"And if any of the interest coupons shall not be paid when due, the whole of the principal shall mature and be due at said time without demand, and said principal debt and said unpaid coupons shall represent and stand for the amount due, and the unpaid coupon first matured shall become a part of the principal, and the whole of said principal and the first unpaid coupon shall bear 12 per cent. per annum interest thereon from the maturity of said coupon until paid.

"Topeka, Kansas, this 15th day of June, A. D. 1887.

"R. J. McFarland,<br>"Ida McFarland."

Indorsed: "For value received we hereby assign and transfer the within bond, together with all our interest in and rights under the same, without recourse, to John Dibert & Co.                John D. Knox & Co.

"Pay to the order of F. S. De Hass.

"John Dibert & Co.<br>"E. G. De Hass, Executrix of F. S. De Hass."

"$120.00.                        Topeka, Kansas, June 15th, 1887.

"Fifty-four months after date we promise to pay to the order of John D. Knox & Co., $120.00 at the banking house of John D. Knox & Co., Topeka, Kansas, with interest after maturity at the rate of 12 per cent per annum. This coupon being for six months' interest on a principal note for $3,000.00, value received.

"Due December 12, 1891.                    R. J. McFarland.
"Ida McFarland.

"Loan No. 3,151."

Indorsed: "For value received we hereby assign and transfer the within bond, together with all our interest in and rights under the same, without recourse, to John Dibert & Co.                John D. Knox & Co.

"Pay to the order of F. S. De Hass.

"John Dibert & Co.<br>"E. G. De Hass, Executrix of F. S. De Hass."

"$120.00.                                     Topeka, Kansas, June 15th, 1887.

"Sixty months after date we promise to pay to the order of John D. Knox & Co., $120.00 at the banking house of John D. Knox & Co., Topeka, Kansas, with interest after maturity at the rate of 12 per cent per annum. This coupon being for six months' interest on a principal note for $3,000.00, value received.

"Due June 15th, 1892.                                     R. J. McFarland.
                                                          "Ida McFarland.

"Loan No. 3,151."

Indorsed: "For value received we hereby assign and transfer the within bond, together with all our interest in and rights under the same, without recourse, to John Dibert & Co.                     John D. Knox & Co.

"Pay to the order of F. S. De Hass.
                              "John Dibert & Co.
                              "E. G. De Hass, Executrix of F. S. De Hass."

The plaintiff excepted to the entry of judgment, and assigns the same as error.

Should judgment have been so entered? As respects the first question reserved, we agree with the circuit court. The note and coupons are mercantile instruments, not only according to the laws of Kansas, by which the parties bound themselves, but according to the law-merchant as well; and we deem it unnecessary to add anything to what the court has so well said on the subject.

As respects the second point raised, we cannot adopt the conclusion reached. If the payee's transfer of the paper had been by indorsement, instead of assignment, no question could have arisen. The assignment relieved the maker from the effect of his promise to pay "to order," and thus subjected the paper to defense by him in the hands of subsequent indorsees. The suit, however, is not against him, but against the indorser, John Dibert & Co.; and the question presented is therefore, what is the effect of the indorsement? It must be decided by the terms of the statute of 3 & 4 Anne, and the construction given them by the courts. Originally promissory notes were not recognized as mercantile instruments, but were treated as common *choses in action;* and were therefore not transferable. The statute placed them on equality with bills of exchange, provided for their transfer by indorsement, giving to such transfer the effect accorded to indorsements of bills of exchange; and thus made them mercantile instruments. Soon after the date of the statute the question arose: Is a promissory note from which the term "order," or "bearer," has been omitted, embraced by it, and therefore transferable by indorsement, with the consequences, as respects the *indorser and indorsee,* therein provided for? By the omission the maker reserved to himself the right to defend against payment after transfer; and it was therefore urged that the instrument is not covered by the statute, and consequently that the indorsement creates no obligation. The English courts, however, decided otherwise; holding that the instrument is within the spirit of the statute; that it is consequently transferable by indorsement; and that such transfer has the same consequences between the indorser and indorsee, as it would have if the term had not been omitted; thus holding the paper to be a mercantile instrument, the indorsement of which creates a contract to pay according

to its face—if the maker fails to do so.   The courts said the indorsement is substantially the drawing of a new note in the terms of the old; or of an inland bill of exchange whereby the indorser orders the maker to pay the money due him to the indorsee.   From the date of the earliest decision of the question (in Hill v. Lewis, 1 Salk. 132) to the present time there has been no variation in this respect by the English courts, though the point has been repeatedly raised; and the decision has been uniformly followed in, this country.  . As the supreme court of Pennsylvania said in Leidy v. Tammany, 9 Watts, 356: "The English courts, looking upon the statute as a remedial one, entitled to a liberal construction in accordance with its spirit, extended it to notes not made transferable by their tenor, when they are deemed mercantile instruments."   This statement is fully sustained by Hill v. Lewis, 1 Salk. 132; Hodges v. Stewart, Id. 125; Smith v. Kendall, 6 Term R. 123; Burchell v. Slocock, 2 Ld. Raym. 1545; Turnpike-road v. Hurtin, 9 Johns, 217; Leonard v. Mason, 1 Wend. 522; Codwise v. Gleason, 3 Day, 12; Smallwood v. Vernon, 1 Strange, 479; Leidy v. Tammany, 9 Watts, 353.   In the last of these cases, where the general subject is fully and ably considered, the court says, although without the word "order" or "bearer" being inserted, the payee cannot transfer the note so as to enable his transferee to maintain an action in his own name against any party to it "except the indorser, yet it is now well settled that the indorsee may maintain an action against the indorser; so that as against him the note and indorsement will have the same operation as if he had express authority to transfer."   In Hill v. Lewis, 1 Salk. 132, it is said that an indorsement is, under the statute, equivalent to making a new bill in the terms of the one indorsed. In Ballingalls v. Gloster, 3 East, 482, the court says:   "There is no distinguishing the case of an indorser from that of a drawer, it having long ago been decided that every indorser is in the situation of a new drawer, every indorsement a new bill, and that the indorser stands as to the indorsee, in the law-merchant, the same as the drawer." This is repeated in Smallwood v. Vernon and others of the cases cited.   In Heylyn v. Adamson, 2 Burrows, 676, Lord Mansfield likened the indorser to the drawer of a bill of exchange, saying that while as between the maker and payee there is no such similarity the "resemblance begins with the indorsement, for that is an order on the maker by the indorser to pay the amount due him to the indorsee, and is thus within the very definition of a bill of exchange." In Slacum v. Pomery, 6 Cranch, 222, Chief Justice Marshall says: "The indorsement of a bill is understood to be not simply a transfer of the paper,. but a new substantive contract."

Later the question arose:   Is the indorser of an overdue promissory note (even when drawn to order or bearer) within the statute, and responsible accordingly?   It was urged that he is not, because by the delay the maker is let in to defend, as if the terms "to order" or "bearer" had been omitted.   The courts of England, however, as well as of this country, following the reasoning in the former class of cases, held otherwise.   Brown v. Davies, 3 Term R. 83; Bank v. Barriere, 1 Yeates, 360; Brower v. Hastings, 36 Pa. St. 285; Bar-

net v. Offerman, 7 Watts, 130; Snyder v. Riley, 6 Pa. St. 165. In Bank v. Barriere, the court says: "Every indorsement of a bill is considered a new drawing. After the day of payment in a note has expired, the indorser cannot be looked upon otherwise than as a new drawer;" and he was consequently held responsible as such. In Brown v. Davis Justice Buller said: "When a note has been indorsed after it became due, I consider it a note newly drawn by the indorser;" and the defendant was held responsible accordingly.

About the same time a third question arose: Is the indorsement of nonmercantile paper—such as a written promise to pay money conditionally, or to pay in something else than money, etc.—within the statute, and the indorser liable as such? To this question the courts of England and of this country returned a negative answer; holding that such paper stands as it did at common law, constituting a mere *chose in action*, and is not therefore transferable in the sense of the law-merchant. Patterson v. Poindexter, 6 Watts & S. 227; Gray v. Donahoe, 4 Watts, 400; Wright v. Hart, 44 Pa. St. 454; Bank v. Piollet, 126 Pa. St. 194 [17 Atl. 603]; Iron Works v. Paddock, 37 Kan. 510 [15 Pac. 574]; Story v. Lamb, 52 Mich. 525 [18 N. W. 248]; Bank v. Gay, 71 Mo. 627; Fear v. Dunlap, 1 G. Greene, 334; Aniba v. Yeomans, 39 Mich. 171.

How then should the case before us be decided? It is not covered by the terms of the statute, nor are its facts embraced in either of the three classes of cases cited. It must be determined therefore, by the light which its proper analogies shed on the subject. These analogies are, we believe, found in the first two classes of cases cited. In all material respects it closely resembles them; in principle it seems identical with them. Here the paper is, as it was there, mercantile in character, and consequently negotiable. In the law-merchant this latter term signifies transferable by indorsement, with the consequence there attached to such transfers. The negotiability of paper (except as between the original parties) does not depend, as we have seen, upon the maker's authorization of a transfer, as by promising to pay to order, or bearer (as is sometimes inaccurately said), but upon the character of the paper. In the last of the three classes of cases mentioned the paper involved, contained such a promise, but as it was not mercantile in character, the indorsement had not the effect of a mercantile contract. As said by the court in Patterson v. Poindexter, 6 Watts & S. 234: "The contract of indorsement is a parasite which like the chameleon, takes its hue from the thing with which it is connected." On the other hand the paper involved in the first of these classes, (which did not contain such a promise) was held to be mercantile, and consequently negotiable. In our case it is true the situation of the indorsee is simply that of an equitable assignee as against the maker; but so was that of the indorsees in the first class of cases cited, and substantially so, at least, was that of the indorsees involved in the second class. Here the effect of the maker's promise to pay "to order" was lost by the payee's failure to indorse, while in the second class it was lost by his failure to indorse before the note matured. In both the promise to pay to order or bearer was thus annulled, (as if erased) and

the note made to read as if such promise had been omitted—rendering the instrument identical with those involved in the first class.

The circuit court likened the case to those of the third class—from which, as we believe for the reasons stated, it is plainly distinguishable. There the instruments involved were not mercantile—although drawn to "order" or "bearer." The cases relied upon by the court all rest on this plain distinction. The indorsement there was of a mere *chose in action*. In Gray v. Donahoe Chief Justice Lewis points out the distinction between such cases and those of the first class mentioned, very clearly. The note before him was drawn "to order," but was payable in "current funds at Pittsburg." While he therefore held it to be non-mercantile and consequently non-negotiable—saying that "nothing but money is properly the subject of a negotiable contract"—he added, "A note not negotiable in form, as between the original parties, may be negotiable between subsequent ones", citing Leidy v. Tammany.

The third question reserved, on which the circuit court did not pass, must now be disposed of. The paper is made payable in Kansas, and as we have seen, the parties expressly submitted themselves to the laws of that state. They fixed the rate of interest at 12 per cent. after default, which the laws of Kansas justify. This question must therefore receive an affirmative answer.

The judgment must be reversed, and the record remitted to the circuit court for further proceedings, in accordance with this opinion.